UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**DANIEL MONCADA**,

      Plaintiff,

vs.

**LMR LLC.,** a foreign limited liability
corporation,

      Defendant.

_____/

## <u>COMPLAINT</u>

Plaintiff DANIEL MONCADA, through undersigned counsel, sues Defendant LMR, LLC.**,** a foreign limited liability corporation, and alleges as follows:

1.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.  This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to order Defendant's food products and branded merchandise online.  This is also an action for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his handheld mobile smartphone device, hereinafter referred to as "mobile device"), and for compensatory damages to Plaintiff for such trespass.  Remedies provided under common law for trespass are not exclusive and may be sought in connection with suits brought under the ADA.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief

pursuant to 28 U.S.C. §§ 2201 and 2202.  In addition, this Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff DANIEL MONCADA is a resident of the State of Florida, resides within the Southern District of Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is, and at all relevant times has been, suffering from bilateral retinopathy and retinal detachment, a permanent eye disease and medical condition that renders him legally blind.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, accurately visualizing his world and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*., and in 42 U.S.C. 3602, §802(h).

6.      Because of his being visually disabled, Plaintiff cannot use his mobile device without the assistance of appropriate and available screen reader software.

7.      Defendant LMR LLC. is a foreign limited liability corporation authorized to do business and doing business in the State of Florida. Defendant owns and operates a chain of approximately 27 restaurants throughout the United States, including locations within the State of Florida.

8.      Plaintiff's disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with his use of a mobile device.

9.     Plaintiff regularly accesses the internet on his mobile device.  Because he is legally blind, to effectively communicate and comprehend information available on the internet and access/comprehend mobile websites, Plaintiff uses commercially available, Voiceover screen reader software to interface with the various mobile websites.

10.     At all times material hereto, Defendant was and still is an organization which owns and operates a chain of restaurants under the brand name "Carolina Ale House."  Each Carolina Ale House restaurant is open to the public.  As the owner and operator of these restaurants, Defendant is defined as a "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     By virtue of being a restaurant open to the public, each of Defendant's restaurants is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.     Defendant controls, maintains, and/or operates an adjunct website and mobile website called www.carolinaalehouse.com (hereinafter the "Mobile Website") that is configured for use by mobile devices such as smartphones to access Defendant's internet website.  One of the many functions of the Mobile Website is to provide the public information on the various locations of Defendant's restaurants within the State of Florida.  The Mobile Website also provides visitors with information on Defendant's merchandise, promotions, and discounts, allows visitors to purchase gift cards for use at the restaurants, and allows visitors to sign up for Defendant's e-club/ rewards program (MVPS) to receive news that Defendant wishes to share with its patrons.

13.     The Mobile Website also services Defendant's restaurants by providing information on its available food products and branded merchandise, tips and advice, editorials, sales campaigns, and events, and other information that Defendant is interested in communicating to its customers.

14.     Since the Mobile Website allows the public the ability to locate Defendants restaurants sign up for Defendants e-club/ rewards program, sign up for promotions and discounts, and purchase gifts cards  to be used at Defendant's restaurants  to purchase food and merchandise, the Mobile Website is an extension of, and gateway to, Defendant's physical restaurants.  By this nexus, the Mobile Website is characterized as a place of public accommodation per 42 U.S.C. § 12181(7)(E), and an extension of Defendant's brick and mortar locations and businesses.

15.     Because the Mobile Website is a public restaurant/store that is on-line, where the public can view Defendant's offered food, purchase gift cards and sign up for Defendant's e-club/ rewards program and promotions, the Mobile Website is itself a sales establishment, which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the Mobile Website must comply with all requirements of the ADA and must not discriminate against individuals with disabilities and must not deny full and equal enjoyment of the services afforded to the public.

16.     At all times material hereto, Defendant was and still is an organization owning and operating the above-described Mobile Website.  Since the Mobile Website is open through the internet to the public as a retail establishment/restaurant and is a place of public accommodation under the ADA, Defendant, as the owner and/or operator of the Mobile Website, is defined as a "public accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(E) and

28 C.F.R. §36.104(2).   As such, Defendant has subjected itself and the associated Mobile Website it created and maintains to the requirements of the ADA.

17.     Plaintiff is and has been a customer who is interested in purchasing and consuming Defendant's offered food products and merchandise, learning of Defendant's information and discounts, signing up for Defendant's e-club/rewards program, and purchasing Defendant's gift cards, all of which is offered through Defendant's Mobile Website. and which can be used at Defendant's physical restaurants, including but not limited to the one located at 2618 Weston Road, Weston, FL 33331.

18.     The opportunity to pre-shop Defendant's food products and branded merchandise from his mobile device and at home, purchase gift cards through his mobile device, and acquire discounts and learn of promotions through his mobile device are important accommodations for Plaintiff because traveling outside of the home as a visually and physically disabled individual, and having to order the food and beverages from a printed menu at a physical restaurant location, are often difficult, hazardous, frightening, frustrating and confusing experiences.  Defendant has not provided its business information in any other digital format that is accessible for use by blind individuals.

19.     Like many consumers, Plaintiff accesses numerous Mobile Websites at a time to compare food products and branded merchandise, prices, and available promotions and discounts. Plaintiff may look at several dozens of Mobile Websites to compare features, discounts, promotions, and prices.

20.     During the month of October 2017, Plaintiff attempted on several occasions to utilize the Mobile Website to browse through the food products and branded merchandise, gift cards, discounts, and promotions and to educate himself as to the food products and branded

merchandise being offered at the restaurants with the intent of making a purchase through the Mobile Website or at one of Defendant's physical locations.

21.     Plaintiff utilizes Voiceover screen reader software  which, when utilized, allows individuals who are blind or visually disabled to communicate with mobile websites.  However, the Mobile Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and screen reader software.  These barriers are pervasive and include, but are not limited to:

a)  Non-describing images;

b)  Mislabeled navigation; and

c)  Mislabeled links.

22.     The Mobile Website also lacks prompting information and accommodations necessary to allow blind individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's food products, branded merchandise, gift cards, and sign up for Carolina Ale House's e-club/ rewards program from the website.

23.     Plaintiff attempted to locate an "Accessibility Notice" on the Mobile Website which would direct him to a webpage with contact information for disabled individuals who have questions, concerns, or who are having difficulties communicating with the business.  However, Plaintiff was unable to do so because no such link or notice was provided on Defendant's website.

24.     The fact that Plaintiff could not communicate with or within Defendant's Mobile Website left him feeling excluded, as he is unable to participate in the same online mobile shopping experience and access to food products and branded merchandise as provided at the Mobile Website and as experienced by the non-visually disabled public.

25.     Plaintiff continues to desire to patronize the Mobile Website and Defendant's restaurants but is unable to do so as he is unable to effectively communicate with Defendant due to his blindness and defendant's access barriers.  Thus, Plaintiff, as well as others with vision disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's restaurant and the Mobile website, and the fact that the Mobile Website clearly requires input from Defendant's restaurants for its operation and use, the Mobile Website is a place of public accommodation subject to the requirements of the ADA.

27.     On information and belief, Defendant has not initiated a Web Accessibility Policy to insure full and equal use of the Mobile Website by individuals with disabilities.

28.     On information and belief, Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its Mobile Website by individuals with disabilities.

29.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the Mobile Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of the Mobile Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of the Mobile Website by individuals with disabilities.

33.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

36.     On information and belief, Defendant has not created and instituted on the Mobile Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Mobile Website, applications, and digital assets accessible to the visually disabled or blind community.

37.     On information and belief, the Mobile Website does not meet the Web Content Accessibility Guidelines 2.0 ("WCAG 2.0") Level AA or higher of web accessibility.

38.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Mobile Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's food products and branded merchandise offered on its Mobile Website online from their homes.

39.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the Mobile Website, in contravention of the ADA.

40.     Further, public accommodations under the ADA must insure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

41.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic

life.  That mandate extends to internet shopping websites and Mobile Websites, such as the Mobile Website.

42.     On information and belief, Defendant is, and has been, aware of the barriers to effective communication within the Mobile Website which prevent individuals with disabilities who are visually disabled from the means to comprehend information presented therein.

43.     On information and belief, Defendant is aware of the need to provide full access to all visitors to the Mobile Website.

44.     The barriers that exist on the Mobile Website result in discriminatory and unequal treatment of individuals with disabilities who are visually disabled, including Plaintiff.

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

46.     Notice to Defendant is not required because of Defendant's failure to cure the violations.  Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent him in this case, and has agreed to pay them a reasonable fee for their services.

**Trespass Violations**

48.     Plaintiff utilizes his handheld mobile device to access websites such as the Defendant's Mobile Website.  Plaintiff uses his mobile device as a method of conveyance of his personal information.  Plaintiff thus stores his personal information and retains his browsing history on his mobile device.

9

49.     Throughout the Mobile Website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits. Specifically, Defendant informs the Mobile Website user that the user's personal information and browsing history is collected and is used for targeted marketing and advertising.

50.     Because of his blindness, Plaintiff was unable to comprehend the Mobile Website; therefore, Plaintiff has had no choice, and likewise no knowledge, of Defendant's installation of data and information tracking software and the collection of the website user's browsing history and analytics placed on the user's handheld device.

51.     Based upon the review of the Mobile Website, when a user accesses the Mobile Website, Defendant installs software onto the user's handheld device, without the user's advance consent or knowledge.  It is also clear that Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

52.     As such, through its Mobile Website, Defendant has committed a trespass against the Plaintiff, since the Mobile Website places information gathering software on the Plaintiff's handheld device without Plaintiff's knowledge or consent.

## COUNT I – VIOLATION OF THE ADA

53.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

54.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the Mobile Website, as defined within §12181(7)(E) and is subject to the ADA.

55.     Pursuant to 42 U.S.C. §12181(7)(E), The website is a place of public accommodation under the ADA because it provides the general public with the ability to view Defendant's food products, purchase gift cards online, and have those purchased items delivered

to one's home.  Further, the Mobile Website also serves to augment Defendant's stores by providing the public information on the various locations of the restaurants and to educate the public as to Defendant's available food products, and gift cards sold on the Mobile Website and sold in its stores.

56.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

57.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

58.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

59.     The Mobile Website, as an extension of and gateway to its physical restaurant locations, must be in compliance with the ADA, but it is not, as specifically alleged hereinabove and below.

60.     As a result of the inaccessibility of the Mobile Website, individuals with disabilities who are visually disabled are denied full and equal enjoyment of the information and services that Defendant has made available to the public on its Mobile Website, and through its restaurants in violation of 42 U.S.C. §12101 *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

61.     A sample review of just part of the the Mobile Website reveals that the Mobile Website is not functional for users who are blind and visually disabled, including, but not limited to, the following:

      a)   Non-describing images;

      b)   Mislabeled navigation; and

      c)   Mislabeled links.

*See*, Expert Declaration and Curriculum Vitae of Robert D. Moody, attached as Composite Exhibit "A".

62.     More violations may be present on other pages of the Mobile Website, which can and will be determined and proven through the discovery process in this case.

63.     Further, the Mobile Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the website's accessibility information and accessibility facts.

64.     There are readily available, well established guidelines on the internet for making mobile websites accessible to the blind and visually disabled. These guidelines have been

followed by other large business entities in making their mobile websites accessible. Incorporating such basic components to make the website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

65.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Mobile Website by individuals, such as Plaintiff, with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within the Mobile Website are ongoing.

66.     The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

67.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".  Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have visual disabilities.

68.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70.     As alleged hereinabove, the Mobile Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71.     As a direct and proximate result of Defendant's failure to provide an ADA compliant mobile website, with a nexus to its brick and mortar stores and physical locations, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of the Mobile Website and full access to and enjoyment of goods, services, facilities, privileges, advantages, or accommodations of Defendant's physical restaurants.

72.     Because of the inadequate development and administration of the Mobile Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)   Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Mobile Website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website.

b)   Require Defendant to take the necessary steps to make the Mobile Website readily accessible to and usable by visually disabled users, and during that time period prior to the Mobile Website's being readily accessible, to provide an alternative method for individuals with visual disabilities to access the information available on the website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Mobile Website for purposes of viewing and locating Defendant's stores and locations, and becoming informed of and purchasing Defendant's food products and branded merchandise online, and during that time period prior to the Mobile Website's being designed to permit individuals with visual impairments to effectively communicate, to provide an alternative method for individuals with visual impairments to effectively communicate for such goods and services made available to the general public through the Mobile Website.

74.    Plaintiff is entitled to recover his reasonable attorney's fees, costs and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A. A declaration that Defendant's website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update its Mobile Website, and continue to monitor and update its Mobile Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Mobile Website and effectively communicate with the Mobile Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendant, by a date certain, to clearly display on its Mobile Website the universal disabled logo within its website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the Mobile Website;

D.  An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;.

E.  An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Mobile Website;

F.  An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its Mobile Website to insure effective communication for individuals who are visually disabled;

G.  An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Mobile Website to be fully accessible to the visually disabled;

H.  An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Mobile Webiste on how to

---



conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its Mobile Website to identify any instances where the Mobile Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from its Mobile Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its Mobile Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

75.     Plaintiff re-alleges paragraphs 1 through 52 as if set forth fully herein.

76.     Plaintiff's tangible personal property, being his mobile device and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's Mobile Website, due to Defendant's employment of software analytics which are present on and through the Mobile Website, which the Plaintiff has navigated.

77.     At all relevant times, Plaintiff did not consent to and was unaware that the Mobile Website was placing software on his computer due to his inability to effectively communicate with and fully view and access the website.

78.     Plaintiff did not consent to the placement of tracking and information securing software on his mobile device; therefore, Defendant has committed a trespass against Plaintiff by placing such software on his computer without his knowledge or consent.

79.     By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass.

80.     Defendant's installation, operation, and execution of software on Plaintiff's mobile device has directly and proximately impaired the condition and value of the Plaintiff's mobile device, thereby causing Plaintiff damages.

81.     Defendant's website has a "Privacy Policy" which discusses the automatic gathering of information from, including the automatic placement of cookies and other information gathering software on, computers and mobile devices of users of its website such as Plaintiff.  A copy of that "Privacy Policy" is attached hereto as Exhibit "B" and its contents are incorporated herein by reference.

82.     Defendant's trespass to chattels, nuisance, and interference have caused real and substantial damage to Plaintiff as follows:

a)  By consuming the resources of and/or degrading the performance of Plaintiff's mobile device (including space, memory, processing cycles, and internet connectivity);

b)  By infringing on Plaintiff's right to exclude others from his mobile device;

c)  By infringing on Plaintiff's right to determine, as the owner of his mobile device, which programs should be installed and operated on his mobile device;

d)  By compromising the integrity, security, and ownership of Plaintiff's mobile device; and

e)  By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on his mobile device without notice or consent.

83.    Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands judgment be entered against Defendant for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.

DATED:  September 18th, 2018.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: pduran@pelayoduran.com


By_____*s/ Roderick V. Hannah*_____
     RODERICK V. HANNAH
     Fla. Bar No. 435384

By ____*s/ Pelayo M. Duran*_____
     PELAYO M. DURAN
     Fla. Bar No. 0146595